NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHANEL, INC., a New York corporation, and LOUIS VUITTON MALLETIER, a French corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-1593 (HAA) |
| –v.– | ) ) | **OPINION AND ORDER** |
| HAKIM N. CRADDOCK and MICHELLE DENEE CRADDOCK-BOULER t/a www.betterhandbags.com and www.betterhandbags1.com, and JOHN DOES 1-10, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Gabriel H. Halpern, Esq.
PINILIS HALPERN, LLP
237 South Street
Morristown, New Jersey 07960
*Attorney for Plaintiffs*

Juliana E. Blackburn, Esq.
THE LAW OFFICES OF JULIANA E. BLACKBURN, P.C.
936 Broad Street, Second Floor
Newark, New Jersey 07102
*Attorney for Defendants*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion by Plaintiff Chanel Inc. ("Chanel") and

Plaintiff Louis Vuitton Malletier ("Vuitton") (collectively "Plaintiffs") for entry of default and

1

default judgment against Defendant Hakim N. Craddock ("Craddock").[1]  For the reasons discussed below, Plaintiffs' motion is GRANTED.

I.     BACKGROUND

This is an action for trademark counterfeiting arising from Craddock's operation of two internet websites devoted to the sale of counterfeit handbags and other goods, some of which bore Plaintiffs' trademarks.  Plaintiffs allege that Craddock is responsible for "manufacturing (or causing to be manufactured), importing, promoting and otherwise advertising, distributing, selling and/or offering for sale counterfeit products, including at least handbags and belts, bearing trademarks which are touted as exact copies of CHANEL Marks and LOUIS VUITTON MARKS."  (Compl. ¶ 25.)  Craddock, through his websites, allegedly "offered for sale and/or sold at least 200 different types of products bearing the Chanel and Vuitton Marks," and in so doing, infringed "on at least nine (9) federal trademark registrations owned by Chanel and Vuitton."  (Pls.' Br. 10.)

After Chanel learned that Craddock was selling unauthorized Chanel handbags and other goods through a fully interactive on-line internet store registered to his name and his mother's address, Chanel sent a cease-and-desist letter to Craddock on November 11, 2004.  Craddock's response indicated that he would discontinue selling Chanel merchandise.  Chanel represents that despite his assurances, Craddock merely moved his business from his original website address, www.betterhandbags.com, to www.betterhandbags1.com.

---

[1] Plaintiffs filed their motion for entry of default and default judgment against both Craddock and his mother, Defendant Michelle Denee Craddock-Bouler.  Plaintiffs subsequently withdrew the motion as to Craddock-Bouler by letter dated January 5, 2006.  Accordingly, the Court will consider Plaintiffs' motion only with respect to Craddock.

In January 2005, Chanel hired a private investigator to purchase from Craddock a handbag being sold under Chanel trademarks. Chanel's Director of Legal Administration, Adrienne Hahn Sisbarro, declares that she analyzed the handbag purchased from Craddock and determined that it was counterfeit.

Chanel represents that Craddock, through his websites, offered for sale and sold at least 52 different styles of products bearing Chanel marks. Vuitton, who joined Chanel's efforts to have Craddock cease and desist selling counterfeit merchandise, represents that Craddock offered for sale and sold at least 187 different styles of products bearing Vuitton marks. Plaintiffs commenced this suit against Craddock and his mother, Michelle Denee Craddock-Bouler (collectively "Defendants"), on March 22, 2005. The Complaint alleges violation of various provisions of the Lanham Act, 15 U.S.C. §§ 1051-1141, as well as common-law misappropriation and unfair competition, and seeks damages, injunctive relief, attorneys' fees and costs. On April 14, 2005, Craddock filed an Answer *pro se* generally denying all claims against him.

The record indicates that on October 19, 2005, Magistrate Judge Mark S. Falk entered an Order requiring Defendants to appear before him for a settlement conference on October 27, 2005 at 9:30 A.M. Magistrate Judge Falk's Order clearly indicated that "[f]ailure to appear will result in sanctions, including possible dismissal of this case." (10/19/05 Order 1.) Craddock failed to appear at the scheduled conference. As a result of Craddock's failure to appear, Magistrate Judge Falk recommended that Plaintiffs make an application to enter a default judgment against Craddock. Plaintiffs filed the instant motion on December 2, 2005.

**II.     ANALYSIS**

Rule 55 of the Federal Rules of Civil Procedure sets forth the procedure for the entry of a default and the grant of a default judgment. By its express terms, the Rule contemplates entry of a default when a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After a default has been entered, the clerk of the court may enter default judgment if the plaintiff's claim is for a sum certain; otherwise, the court may enter default judgment upon application of the non-defaulting party. Fed. R. Civ. P. 55(b). Where the defaulting party has appeared in the action, that party is entitled to receive three days' written notice of the application for judgment before the court may grant default judgment. Fed. R. Civ. P. 55(b)(2).

A district court may enter a default as a sanction. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917 n.11 (3d Cir. 1992). It is also well established that a district court has discretion to enter a default judgment when a party has failed to plead or otherwise defend in an action. *D.B. v. Bloom*, 896 F. Supp. 166, 169-70 (D.N.J. 1995). The Third Circuit has held that Rule 55 of the Federal Rules of Civil Procedure authorizes a district court to enter a default judgment against a defendant who filed an answer but who subsequently failed to appear at trial. *Hoxworth*, 980 F.2d at 918. This principle, the Third Circuit has noted, also permits a district court to "impose[] a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests." *Id.*

A district court may also impose default judgment as a sanction under Rule 37 of the Federal Rules of Civil Procedure for failure to make disclosure or cooperate in discovery. When a party has failed to comply with court-ordered discovery, Rule 37(b)(2)(C) invests the court with

authority to sanction the recalcitrant party by, inter alia, "rendering a judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2)(C); *see also, e.g.*, *Hoxworth*, 980 F.2d at 919.

Rule 16(f) of the Federal Rules of Civil Procedure provides a district court with authority to sanction a recalcitrant party for failure to obey a scheduling or pretrial order. For instance, a party's failure to attend a court-ordered conference may warrant sanctions under Rule 16(f). *See, e.g.*, *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990). This Rule incorporates by reference the sanctions under Rule 37(b)(2)(C). Thus, the sanction of default judgment is available under Rule 16(f). *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 154 n.2 (3d Cir. 1997). Unlike Rule 37(b)(2)(C), Rule 16(f) permits a district court to impose the sanction of default judgment *sua sponte*. Fed. R. Civ. P. 16(f) (providing that sanctions may issue "upon motion or the judge's own initiative"); *see also Fonar Corp. v. Magnetic Plus, Inc.*, 175 F.R.D. 53, 55 (S.D.N.Y. 1997) ("Rule 16 may be imposed by a court *sua sponte* while Rule 37 requires that the aggrieved party move for sanctions.").

This Court may enter a default judgment against Defendant pursuant to Rule 55, Rule 37(b)(2)(C), or Rule 16(f). Plaintiffs' motion does not identify the rule under which they seek entry of a default judgment, although their reference to an "application for default and default final judgment" appears to contemplate the procedures of Rule 55. Accordingly, the Court will consider whether to grant a default and a default judgment against Craddock pursuant to Rule 55. The provision of Rule 55(b)(2) requiring at least three days' written notice prior to the hearing on an application for default judgment has been satisfied because Plaintiff has moved for default judgment pursuant to the briefing schedule set forth in Local Civil Rule 7.1(d).

This Circuit has set forth factors to guide the discretion of a district court faced with

issuing an order that would deprive a litigant of the right to proceed with or defend against a claim. In *Poulis v. State Farm and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984), the Third Circuit instructed district courts to consider

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

The Third Circuit has applied this general framework to the grant of default judgment by district courts. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990).

The first *Poulis* factor requires the Court to examine the degree of Craddock's personal responsibility for the conduct that has led the Court to consider the sanction of default judgment. Ms. Juliana E. Blackburn, who represented Craddock during a portion of these proceedings, has certified to the Court that she advised Craddock in writing that he was required to attend the October 27, 2005 settlement conference before Magistrate Judge Falk. She has also stated that she "left numerous telephone messages at the only number provided to me." (Certif. of Counsel in Opp'n to Pls.' Mot. to Enter Default & in Supp. of Counsel's Mot. to Be Relieved as Counsel ("Blackburn Certif.") ¶ 7.) Despite this notice, Craddock failed to attend the Court-ordered conference. Under such circumstances, the Court finds that Craddock bears a high degree of personal responsibility for the predicament in which he now finds himself.

With respect to the second *Poulis* factor, Plaintiffs state that because of Craddock's default, he has "denied Chanel and Vuitton access to evidence necessary to establish the amount of damages or the amount of [his] profits." (Pls.' Br. 2.) As a result, Plaintiffs have been forced

to seek statutory damages under 15 U.S.C. § 1117(c). The Court also notes that Plaintiffs' counsel appeared as ordered at the October 27, 2005 settlement conference. Thus, it is safe to surmise that Plaintiffs expended both time and money to comply in good faith with an Order of the Court, even when Craddock had not done likewise.

The third *Poulis* factor requires the Court to consider whether Craddock has exhibited a history of dilatoriness. Although Craddock's failure to attend a single Court-ordered settlement conference may not in itself constitute a "history of dilatoriness," it is consistent with Craddock's earlier delay in complying with Chanel's cease-and-desist letter. Moreover, Adrienne Hahn Sisbarro has declared that Defendants "have not responded to discovery requests." (Decl. of Adrienne Hahn Sisbarro ("Sisbarro Decl.) ¶ 3.)[2] Craddock's failure to attend the October 27, 2005 settlement conference, coupled with his failure to respond to Plaintiffs' discovery requests, constitute a history of dilatoriness as contemplated by *Poulis*. *See* 747 F.2d at 868 (discussing a "pattern of dilatoriness" and distinguishing a case in which there was "only one failure to comply in a timely manner").

The fourth *Poulis* factor favors Plaintiffs, as there is evidence that Craddock's behavior has been willful and in bad faith. As noted with respect to the first *Poulis* factor, the certification of Juliana E. Blackburn reveals that Craddock had actual notice (or was willfully blind to such notice) of the October 27, 2005 settlement conference. Yet, Craddock chose not to appear as ordered, and indeed failed to communicate with his attorney until December 12, 2005. (Blackburn Certif. ¶ 9.) Craddock's April 14, 2005 *pro se* Answer demonstrates that Craddock

---

[2] In his May 24, 2005 Scheduling Order, Magistrate Judge Haneke ordered that all discovery was to be completed by September 30, 2005.

was aware of the proceedings against him, and his apparent lack of concern with these proceedings is troublesome. The Court therefore concludes that Craddock's dilatoriness was willful and in bad faith.

The fifth *Poulis* factor instructs the Court to consider the effectiveness of sanctions other than dismissal. Such alternative sanctions include the imposition of a fine or the award of attorneys' fees. Having considered the certification of Juliana E. Blackburn in support of her motion to withdraw as Craddock's counsel, the Court finds that Craddock is solely responsible for his failure to appear at the October 27, 2005 settlement conference, and that a penalty levied against his counsel would be inappropriate. *Cf. Poulis*, 747 F.2d at 869 (discussing the appropriateness of imposing costs on counsel where delay is attributable to counsel). Moreover, the Court finds that the imposition of a fine or costs on Craddock, individually, would do little to remedy a situation in which Craddock has failed to participate in discovery and has failed to appear at a post-discovery settlement conference. *See Flynn v. Thibodeaux Masonry, Inc.*, 311 F. Supp. 2d 30, 36 (D.D.C. 2004) ("In those cases where a court orders a dismissal or enters a default judgment, the disobedient party typically has engaged in a pattern of noncompliance with court orders so that no lesser sanction is warranted. Accordingly, courts have granted default judgment when parties have not complied with court orders or have missed hearings." (internal citations omitted)). Indeed, Magistrate Judge Falk's October 19, 2005 Order placed Craddock on notice that his failure to attend the October 27, 2005 settlement conference could result in dismissal of his case. Therefore, the Court finds that the sanction of dismissal is warranted under these circumstances, and that alternative sanctions would not be appropriate in light of the notice provided to Craddock and his history of dilatoriness.

Finally, *Poulis* instructs district courts to consider the meritoriousness of the claim or defense.  For this inquiry, a court need only satisfy itself that "the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 870.  Having reviewed the allegations of the Complaint, the Court is satisfied that Plaintiffs' allegations, if established at trial, would fully support recovery.  By contrast, Craddock's defense, which consists only of a blanket denial of wrongdoing in his *pro se* Answer, does not suggest to this Court any grounds that might constitute a "complete defense."

Plaintiffs have made a number of specific allegations that support their claims.  Both Plaintiffs have fully detailed their ownership of their respective trademarks, which qualify as famous marks under 15 U.S.C. § 1125(c)(1).  Plaintiffs have averred that their marks have never been assigned or licensed to Defendants, and that their marks have not been abandoned.  They have further alleged that Craddock had full knowledge of Plaintiffs' ownership of the marks.  Nevertheless, Plaintiffs have alleged, Craddock is responsible for "manufacturing (or causing to be manufactured), importing, promoting and otherwise advertising, distributing, selling and/or offering for sale" products bearing and sold under the Chanel and Vuitton marks.  (Compl. ¶ 25.)  Plaintiffs have represented that these products were in fact counterfeit, and that even after Craddock was notified in writing of his wrongful conduct, he continued to sell counterfeit merchandise.  Craddock's unlawful operations, Plaintiffs have alleged, encompassed "at least 200 different types of products bearing the Chanel and Vuitton marks" and "infring[ed] on at least nine (9) federal trademark registrations owned by Chanel and Vuitton."  (Pls.' Br. 10.)  These allegations, the Court finds, would support full recovery by Plaintiffs if established at trial.

On balance, the *Poulis* factors weigh decidedly in favor of Plaintiffs and call for the entry

9

of a default and the grant of default judgment against Craddock. Craddock had fair warning of the October 27, 2005 settlement conference and the consequences of his failing to appear. Notwithstanding this notice, he failed to comply with the Court's Order and has never offered any explanation for his absence. Under such circumstances, the Court finds that the entry of default and the grant of a default judgment is an appropriate sanction.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for entry of default and default final judgment is GRANTED. The Court will reserve final judgment until counsel has been heard on the issues of damages and injunctive relief. A hearing will be held for this purpose on April 26, 2006 at 2:30 P.M.


Newark, New Jersey                              s/ Harold A. Ackerman, U.S.D.J.
Dated: February 27, 2006